UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
No: 4:14-CV-00092-D

| | |
|---|---|
| LEONARD C. ASH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>POWERSECURE INTERNATIONAL, INC., SIDNEY HINTON, and CHRISTOPHER T. HUTTER,<br><br>Defendants. | **CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Leonard C. Ash ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, said investigation included, among other things, a review of the defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings, analysts' reports and advisories about PowerSecure International, Inc. ("PowerSecure" or the "Company").

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons or entities who purchased shares of PowerSecure common stock between March 10, 2014 and May 7, 2014, both dates inclusive (the "Class Period"), on the open market, seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue

remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5.

2. PowerSecure provides energy management and conservation solutions to utilities and their commercial, institutional, and industrial customers. The Company partners with utilities to design and install systems and services that manage load curtailment and peak demand conditions, and provide customers with emergency power during outages.

3. On May 7, 2014, the Company reported its first quarter 2014 financial results, including an adjusted loss of ($0.17) per share compared to analysts' consensus estimates of $0.02 per share. PowerSecure disclosed that it "mis-timed actions to shift resources to more profitable customers, as revenues from those new customers were not adequate to sustain our margins." This is a stark contrast from what PowerSecure's top executives represented during the fourth quarter and fiscal 2013 earnings call, less than two months prior on March 10, 2014.

4. On the May 7 disclosures, PowerSecure common stock declined $11.60 per share or nearly 62%, to close at $7.00 per share on May 8, 2014.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as PowerSecure's principal place of business is located within this District.

8. In connection with the acts, conduct and other wrongs alleged in this Complaint,

defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff, as set forth in the attached Certification, purchased PowerSecure common stock on the open market at artificially inflated prices during the Class Period.

10. Defendant PowerSecure is a Delaware corporation with its principal executive offices located at 1609 Heritage Commerce Ct., Wake Forest, NC 27587. PowerSecure's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "POWR."

11. Defendant Sidney Hinton ("Hinton"), was, at all relevant times, the Company's President and Chief Executive Officer.

12. Defendant Christopher T. Hutter ("Hutter") was, at all relevant times, the Company's Executive Vice President, Chief Financial Officer, Treasurer and Secretary.

13. The defendants referenced above in ¶¶ 11 and 12 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

14. PowerSecure is a leading provider of products and services to electric utilities, and their large commercial, institutional and industrial customers. The Company's Utility and Energy Technologies segment consists of its three product and service offerings: Distributed Generation ("DG") products and services, Utility Infrastructure ("UI") products and services, and Energy Efficiency ("EE") products and services. The Company's DG solutions involve manufacturing, installing and operating electric generation equipment "on site" at a facility

3

where the power is used, including commercial, institutional and industrial operations. The Company's UI solutions focus on helping electric utilities design, build, upgrade and maintain infrastructure that enhances the efficiency of their grid systems. The Company's EE solutions assist its customers in the achievement of their energy efficiency goals.

### Materially False and Misleading Statements Issued During the Class Period

15. On March 10, 2014, 21 days before the end of the first quarter 2014, the Company reported financial results for the fourth quarter and full year ended December 31, 2013 where it reported revenue backlog of $248 million. In the press release, Defendant Hinton commented, in relevant part:

> Our record backlog, healthy order activity, exceptional balance sheet, and the benefits we are realizing from our acquisitions, all provide our team with confidence that our best-in-class solutions for large, growing and underserved markets, combined with our relentless commitment to serve our customers, will translate into a strong year for PowerSecure in 2014.

16. Also on March 10, 2014, the Company held a conference call with analysts to discuss the financial results for the fourth quarter and full year ended December 31, 2013. During the conference call, Defendant Hinton represented the following, in relevant part, concerning PowerSecure's distributed generation ("DG") and utility infrastructure ("UI") businesses:

> As we succeed in beginning to penetrate this large [DG] data center opportunity, it could have a transformative impact on our distributed generation business. I emphasize this point. This is a big deal for you as investors and for the analysts. Penetration of the large data center opportunity could have a transformative impact on our distributed generation business.

> \* \* \*

> I would also point out that this kind of growth we have seen and managed very effectively throughout the history of the company. I would also point out that the average size of our distributed generation project grew by 28% in 2013 versus

4

2012, which reflects the increasing contributions of the larger industrial hospital and small to mid-sized data centers.

* * *

Turning now to utility infrastructure, which grew right at 82% year-over-year in the fourth quarter, and right at 84% for the full-year, our growth continues to be driven by winning new business for new utility partners and expanding our business with existing partners with an additional contribution from the work we are doing for the energy companies.

* * *

With this developing relationship, with our backlog and with the high quality of sales in our pipeline, we have visibility into what we believe will be another very good year in 2014 for our utility infrastructure business. The profitability of this segment is a major corporate priority for us in 2014. We have an outstanding team of leaders there and they are plowing ground and doing a tremendous job of building our great business, not just in 2013 and back and not just for 2014; we're looking out to 2015 and '16, a great leadership team.

* * *

In summary, 2013 was a terrific year. Our strong revenue growth of 67%, our record backlog of $248 million and the conversations that I have every day with our customers, with our utility partners or with our employees have us very excited about the continued growth and success of PowerSecure. We are well positioned for another record year in 2014 and our pipeline of opportunities is the healthiest we've ever seen, which bodes well for 2015.

17.     Similarly, during the conference call, Defendant Hutter represented that the Company expects "2014 gross margins to continue to be in the mid to high 20%" and represented the following concerning the Company's revenue backlog:

Ok, very good. Let me turn to our revenue backlog, as of today the revenue backlog is a record 248 million, this compares to 240 million at the time of our last earnings release and 183 million a year ago, so nice increases there. As we described -- as we always described in earnings release we break it down in three categories, we got our near-term backlog which is project based work, including orders for our DG our UI and our energy efficiency products, there we expect to recognize over the course of the next three quarters, which got our longer term project based work. And then we've got our recurring revenues that we measure every quarter.

5

*       *       *

>   Overall, our backlog implies continued growth as our near term backlog is up
>   18% over last year this time and our long term backlog has almost quadrupled. As
>   always, the key will be the timing of order conversion from our pipelines to our
>   backlogs, in other words our ability to sell and execute. We are in good position
>   and we remain strongly focused on the work to be done to deliver another year of
>   strong numbers in 2014 particularly given the tough year-over-year comparisons
>   that we're facing as we move through the year.

18.     During the Q&A portion of the conference call, Defendant Hinton had the following exchange with Tyler Frank of Robert W. Baird:

>   Q:          Great. And then just another brief one. When we look at the
>   pipeline, I guess the opportunities that are currently outside of your backlog, but
>   in the larger pipeline. Can you tell us how things look from that sense, and where
>   you might be seeing traction but also, any areas where you might be seeing some
>   weakness right now?
>
>   Hinton:     Yes, I can tell you across the board we don't see any weaknesses,
>   It's a very, very, very healthy pipeline across the board, best we've ever had,
>   Definitely in utility infrastructure, definitely in DG, definitely in the ESCO
>   portion, definitely in the LED lighting. I mean it's really, it's great. And we are
>   very, very bullish on the pipeline, very bullish.

19.     On March 10, 2014, the Company filed an annual report for the year ended December 31, 2013 on a Form 10-K with the SEC, which was signed by Defendants Hinton and Hutter, and reiterated the Company's previously announced financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Hinton and Hutter, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20.     In the Form 10-K, the Company represented the following in relevant part concerning its gross margin:

>   We market our products and services primarily through a direct sales force. Our
>   sales and marketing effort is focused on sales channels that include, are

6

Case 4:14-cv-00092-D   Document 2   Filed 05/28/14   Page 6 of 17

complementary to, and are in partnership with utilities, as well as national and local commercial, industrial, institutional and municipal accounts. For our Distributed Generation products and services we are very focused on the needs of utilities and partner with utilities to develop, market and manage Distributed Generation systems to their customers. This partnering process includes combining our Distributed Generation solutions with products or services of the utility, and working with the utility in marketing our Distributed Generation solution to end customers. For our Utility Infrastructure products and services, we market directly to utilities, including investor-owned utilities, cooperatives and municipalities. For our Energy Efficiency LED lighting products, we market to commercial, industrial and institutional customers, and also directly to utilities and municipalities. For our Energy Efficiency ESCO solutions we market directly to the super ESCOs. In each of our business areas, from time to time, we utilize independent representative networks, and we also establish alliances with channel partners who can assist with our sales and marketing activities. We plan to continue expanding our sales and marketing efforts, domestically and globally, in order to market and support our traditional and our new products, services and technologies, including direct sales as well as through third party representatives and channel partners.

*   *   *

[W]e realized inefficiencies in our Utility Infrastructure unit in 2013 related to the advanced deployment of crews in anticipation of being selected for a significant long-term revenue opportunity with a major utility partner. We anticipate some continued inefficiencies from these excess crews, as well as some continued inefficiencies in our Energy Efficiency operations due to on-going realignment actions, to negatively impact our gross margins during the first quarter of 2014…. In the near-term, we expect our total gross margins will be in the mid to upper 20%-range as we continue to realize strong growth in these lower margin products and service lines.

21. The statements referenced in ¶¶ 15-20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, including that the Company lacked the experience and internal control necessary to expand the DG business into larger contracts, and accordingly Defendants: (i) inefficiently shifted resources from its utility infrastructure business to other customer opportunities without the necessary experience of controls required to sustain its revenues and gross margins; and (ii) lacked the

7

ability to convert larger distributed generation project opportunities from its pipeline into revenue backlog.

## THE TRUTH EMERGES

22. Less than two months later, on May 7, 2014, the Company reported financial results for the first quarter ended March 31, 2014. For the quarter, the Company reported net loss of $4.3 million, or ($0.19) diluted earnings per share ("EPS"); non-GAAP EPS of ($0.17); and revenue of $52.8 million, as compared to net income of $733,000 or $0.04 diluted EPS; non-GAAP EPS of $0.04 and revenue of $45 million for the same period a year ago. Further, the Company disclosed the following concerning PowerSecure's gross profit margin declining from 30.6% in the first quarter 2013 to 20.9% in the first quarter 2014:

> This year-over-year gross margin decrease was driven primarily by inefficiencies in our utility services group as we took actions to shift resources, including equipment and people, away from certain lower-profit assignments. Our intent was to deploy these resources towards customer opportunities to increase our long-term profitability. However, we were not successful in redeploying all of the assets to new assignments in a timely manner as a result of lower-than-expected revenues from certain customers. These productivity losses caused us to incur higher levels of personnel and equipment costs in our cost of goods sold as a percentage of our revenues, driving the gross margin on our utility services revenue to 5.9 percent for 1Q 2014, and our overall utility infrastructure revenue gross margin to 9.9 percent. This compares to 25.6 percent in 1Q 2013 and an average quarterly gross margin of 19.5 percent for utility infrastructure revenues in full year 2013.

23. In the press release, Defendant Hinton admitted that the Company "mis-timed actions to shift resources to more profitable customers, as revenues from those new customers were not adequate to sustain our margins." Moreover, Defendant Hinton revealed that there was a "protracted timing in converting larger distribution generation project opportunities from our pipeline into our backlog" which reduced PowerSecure's revenue and profit expectations for 2014.

8

24. Also on May 7, 2014, the Company held a conference call with analysts to discuss the financial results for the first quarter 2014. During the conference call, Defendant Hinton disclosed that its utility infrastructure division had a revenue shortfall and operating inefficiencies that "negatively impacted the gross margins and our bottom line" because "we miss timed the shift in resources from less profitable customers to more profitable customers, as revenues from the new customers have revenues did not materialize fast enough to sustain the margins that we were hoping to achieve." Significantly, Defendant Hinton admitted that as the Company moved through 2013 PowerSecure "saw that the gross margins - the utilization was a significant issue. And we made a conscious decision late in the year to try to slow that growth down and fix these gross margins. Again we miss timed that which resulted in these first quarter results." Further, Defendant Hinton attempted to explain that the timeline for conversion for larger distributed generation projects was "longer than what we had experienced" as the Company was "more accustomed to chasing, winning and forecasting" smaller projects.

25. As a result of the May 7 disclosures which contradicted the positive statements made two months earlier, PowerSecure common stock declined $11.60 per share or nearly 62%, to close at $7.00 per share on May 8, 2014.

26. On May 9, 2014, Barron's published an article by an analyst at Maxim Group where he recommended "that investors move to the sidelines following first-quarter results" after being "blindsided by the results, particularly given the cadence, backlog and outlook provided following fourth-quarter results back in March of this year." The analyst also noted that the Company's $0.17 loss per share was "well below our estimate of three cents and the consensus of two cents" and its revenue of $52.8 million was "below our estimate of $60.6 million and the consensus of $59.3 million."

9

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased shares of PowerSecure common stock on the open market during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PowerSecure common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PowerSecure or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of PowerSecure;

- whether the Individual Defendants caused PowerSecure to issue false and misleading statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of PowerSecure common stock during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

**(Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

11

34. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, defendants engaged in a plan, scheme, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of PowerSecure common stock; and (iii) cause Plaintiff and other members of the Class to purchase PowerSecure common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

36. Pursuant to the above plan, scheme, and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for PowerSecure common stock. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about PowerSecure's finances and business prospects.

12

37.     By virtue of their positions at PowerSecure, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made.

38.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of PowerSecure. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to PowerSecure's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of PowerSecure common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning PowerSecure's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased PowerSecure common stock at artificially inflated prices and relied upon the price of the common stock, as the integrity of the market for the common stock, and were damaged thereby.

39.     Had Plaintiff and the other members of the Class known the truth, they would not have purchased said common stock, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of PowerSecure common stock was substantially lower than the prices paid by Plaintiff and the other members of

the Class. The market price of PowerSecure common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

40. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

41. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. During the Class Period, the Individual Defendants participated in the operation and management of PowerSecure, and conducted and participated, directly and indirectly, in the conduct of PowerSecure's business affairs. Because of their senior positions, they knew the adverse non-public information about PowerSecure's misstatement of income and expenses and false financial statements.

44. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to PowerSecure's financial condition and results of operations, and to correct promptly any public statements issued by PowerSecure which had become materially false or misleading.

45. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

14

releases and public filings which PowerSecure disseminated in the marketplace during the Class Period concerning PowerSecure's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause PowerSecure to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of PowerSecure within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of PowerSecure common stock.

46. Each of the Individual Defendants, therefore, acted as a controlling person of PowerSecure. By reason of their senior management positions and/or being directors of PowerSecure, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, PowerSecure to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of PowerSecure and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

47. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PowerSecure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 22, 2014.

Respectfully submitted,

**RABON LAW FIRM, PLLC**

_____
Gary Jackson (NC State Bar #: 13976)
225 E. Worthington Avenue, Suite 100
Charlotte, NC 28203
Telephone: (704) 377-6680
Facsimile: (704) 377-6690

**WOLF POPPER LLP**
Lester L. Levy
Robert C. Finkel
Fei-Lu Qian
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

*Attorneys for Plaintiff*

# PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, Leonard C. Ash, hereby state:

1. I have reviewed the annexed complaint against PowerSecure International, Inc. ("PowerSecure") and certain officers and have authorized its filing on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, as defined in the above referenced complaint, including providing testimony at deposition and trial, if necessary.

3. The following includes all of my transactions in PowerSecure common stock during the period March 10, 2014 through May 7, 2014:

| TRANSACTION | TRADE DATE | PRICE | QUANTITY |
|---|---|---|---|
| Buy | 05/02/2014 | $ 21.3099 per share | 1,590 |

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have not sought to serve, and have not served, as a representative on behalf of a class in any private action arising under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of May, 2014

By: _____
Leonard C. Ash