IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD C. ASH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:14-CV-92-D |
| POWERSECURE INTERNATIONAL, INC., SIDNEY HINTON, and CHRISTOPHER T. HUTTER, | ) ) ) ) ) | |
| Defendants. | ) | |
| | | |
| SANDRA TAYLOR, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:14-CV-385-D |
| POWERSECURE INTERNATIONAL, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |
| | | |
| BRANDON HIGGINS, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:14-CV-388-F |
| POWERSECURE INTERNATIONAL, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Three members of the purported class have filed motions to consolidate these three actions, to be appointed lead plaintiff, and to have their choice of lead counsel and liaison counsel approved.

As explained below, the court grants Maguire Financial, LP's ("Maguire") motion, Ash v. PowerSecure Int'l, Inc. et al., No. 4:14-CV-92-D [D.E. 13], to consolidate these actions, to be appointed lead plaintiff, and to have its choice of counsel approved.

I.

PowerSecure International, Inc. ("PowerSecure") develops and markets energy technology products, services, and data management systems to industrial and commercial users and suppliers of natural gas and electricity. Taylor v. PowerSource Int'l, Inc. et al., No. 5:14-CV-385-D (filed July 8, 2014), Compl. [D.E.1] ¶ 2.[1] PowerSecure has three operating segments: its Distributed Generation products and services segment ("DG"), its Utility Infrastructure products and services segment ("UI"), and its Energy Efficiency products and services segment ("EE"). Id. Sidney Hinton is PowerSecure's CEO. Id. ¶ 1. Christopher Hutter is PowerSecure's CFO. Id.

Between August 8, 2013, and May 7, 2014, defendants reported several quarters of record revenues, increasing earnings, and record backlog. Id. ¶ 3. Defendants also claimed that it would achieve gross margins in the "mid to high 20s" and would meet its "goal of implied EPS [of] $1.10-$1.30 in 2015." Id. During this time, PowerSecure issued and sold over 2.5 million shares of stock, and Hinton received and sold significant numbers of PowerSecure securities. Id. ¶ 4.

During the same time period, PowerSecure encountered significant operational issues with its UI segment that increased costs, and longer-than-expected sales cycles in its DG segment that failed to produce the expected levels of revenue. Id. ¶ 5. On May 7, 2014, when PowerSecure disclosed these operational problems and the resulting impact on first quarter results, its stock price

---

[1] For purposes of this order, the court adopts the relevant facts from the Taylor complaint. The factual allegations in the complaints of the other two pending cases are substantially similar. See Ash, No. 4:14-CV-92-D (filed May 22, 2014), Compl. [D.E. 1] ¶¶ 2–4; Higgins v. PowerSecure Int'l, Inc. et al., No. 5:14-CV-388-F (transferred from the Middle District of North Carolina on July 9, 2014), Compl. [D.E. 1] ¶¶ 2–6.

2

dropped by more than 62% the following trading day. Id.; see Higgins, No. 5:14-CV-388-F, Compl. ¶ 4. Plaintiffs in the pending actions brought suit, all alleging violations of Rule 10b-5, 17 C.F.R. 240.10b-5, by all defendants, and section 20(a) of the Exchange Act, 15 U.S.C. § 78t, by the individual defendants. See Higgins, No. 5:14-CV-388-F, Compl. ¶¶ 40–54; Ash, No. 4:14-CV-92-D, Compl. ¶¶ 33–47; Taylor, No. 5:14-CV-385-D, Compl. ¶¶ 62–73.

First, the court considers parties' motions to consolidate the pending actions. See 15 U.S.C. § 78u-4(a)(3)(B)(ii) (providing that a trial court shall not appoint a lead plaintiff until rendering a decision on a motion to consolidate). The court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a); 15 U.S.C. § 78u-4(a)(3)(B)(ii) (providing that the pending actions must "assert[] substantially the same claim or claims" to be consolidated). The purpose of consolidation is to avoid unnecessary cost or delay. Equal Emp't Opportunity Comm'n v. HBE Corp., 135 F.3d 543, 550 (8th Cir. 1998); Marketel Media, Inc. v. Mediapotamus, Inc., No. 5:13-CV-427-D, 2013 WL 5965681, at *3–4 (E.D.N.C. Nov. 8, 2013) (unpublished). "District courts have broad discretion under [Rule 42(a)] to consolidate causes pending in the same district." A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928, 933 (4th Cir. 1977). In exercising its discretion, a court weighs the risks of possible prejudice and confusion from consolidation with the risks of inconsistent adjudications of common factual and legal issues, the burden on parties and judicial resources posed by multiple lawsuits, and other efficiencies created by a single suit in lieu of multiple suits. Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982). With respect to securities cases, "consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports." In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (quotation omitted); see In re Facebook, Inc. IPO Sec. and Derivative Litig., 288 F.R.D. 26, 35 (S.D.N.Y. 2012).

The pending actions present common questions of fact and law and are appropriate for consolidation. All three actions allege a class period over the same range, March 10, 2014, to May 7, 2014, although one goes further back in time. See Higgins, No. 5:14-CV-388-F, Compl. ¶ 17; Ash, No. 4:14-CV-92-D, Compl. ¶¶ 1, 15; Taylor, No. 5:14-CV-385-D, Compl. ¶ 16 (asserting that the putative class period begins August 7, 2013). All three allege the same or similar material misrepresentations in a PowerSecure press release and conference call on March 10, 2014. Higgins, No. 5:14-CV-388-F, Compl. ¶¶ 17–20; Ash, No. 4:14-CV-92-D, Compl. ¶¶ 15–21; Taylor, No. 5:14-CV-385-D, Compl. ¶¶ 35–37.[2] All three allege the same May 7, 2014 disclosure of PowerSecure's true financial condition that triggered the decrease in PowerSecure's stock price. Higgins, No. 5:14-CV-388-F, Compl. ¶¶ 21–22; Ash, No. 4:14-CV-92-D, Compl. ¶¶ 22–26; Taylor, No. 5:14-CV-385-D, Compl. ¶¶ 41–48. As noted, the legal claims in the three actions are identical. The court finds that the common questions of fact and law strongly favor consolidation, and no evidence suggests that consolidation would prejudice the defendants. See MicroStrategy Inc., 110 F. Supp. 2d at 431 (holding that "minor differences" such as a difference in alleged class periods did not detract from the "overwhelming factual and legal similarities among the cases").

Next, the court considers the motions of three purported class members to be appointed lead plaintiff and to have their selection of lead counsel and liaison counsel approved. The relevant portion of the statute states:

> [T]he court shall consider any motion made by a purported class member . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . . [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that . . . [1] in the determination of the court, has the largest financial interest

---

[2] The plaintiff in Taylor alleged additional material misrepresentations at other points during its longer putative class period. Taylor, No. 5:14-CV-385-D, Compl. ¶¶ 16–34, 38–39.

in the relief sought by the class; and [2] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(i),(iii).[3]

The court first examines the movants' and complainants' alleged financial interest. The financial interest in the relief sought is the loss that the defendants allegedly caused to the plaintiffs, first, by fraudulently inflating the purchase price of a security through misrepresentation or omission, and second, by subsequently disclosing corrective information that caused the security price to decrease. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342–46 (2005); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 472–73 (4th Cir. 2011) (holding that the corrective disclosure may happen at a single time or gradually); Glaser v. Enzo Biochem, Inc., 464 F.3d 474, 479 (4th Cir. 2006) ("It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' that is actionable ....").

Here, the alleged corrective disclosure occurred after the market closed on May 7, 2014. See Ash, No. 4:14-CV-92-D, Maguire Mem. Supp. Mot. Consolidate [D.E. 13-1] 5. The court calculates the financial interest of the would-be lead plaintiffs by determining the drop in the value of their securities, after the May 7, 2014 closing price of $18.60, that the corrective disclosure caused. See id., Ex. B [D.E. 13-4] (noting the closing price on May 7, 2014).

Maguire alleges a total loss attributable to the corrective disclosure of $2,182,170. Id. This loss was allegedly caused by the May 8, 2014 sale of 93,000 shares of PowerSecure stock at the price of $6.91 per share and by the May 8, 2014 cover purchase of 1,000 put options at the price of $1,330 per option.

---

[3] The would-be lead plaintiffs must also have filed the complaint or made a motion to be appointed lead plaintiff, but that requirement is not in dispute. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

5

Movant Brandon Higgins ("Higgins") alleges a total loss attributable to the corrective disclosure of $11,680. Ash, No. 4:14-CV-92-D, Higgins Mot. Consolidate, Ex. C [D.E. 10-4]. However, this amount may overstate the true losses allegedly caused by the corrective disclosure because it includes a $1.90 decrease in PowerSecure's stock price on May 7, 2014, before the disclosure occurred. See Ash, No. 4:14-CV-92-D, Higgins Mem. Supp. Mot. Consolidate [D.E. 11] 3.

Movants Clay Leslie and Paul Moore ("PowerSecure Investors") allege a total loss attributable to the corrective disclosure of $34,658. Ash, No. 4:14-CV-92-D, PowerSecure Investors Mem. Supp. Mot. Consolidate [D.E. 14-1] 1.

Movant Leonard Ash ("Ash") does not allege a specific total loss attributable to the corrective disclosure, but any loss appears to be less than $21,000. Specifically, Ash states that he purchased 1,590 PowerSecure shares on May 2, 2014, at a price of $21.31 per share. Ash, No. 4:14-CV-92-D, Pl. Certification [D.E. 1-1]. Using a 90-day post-disclosure average price of $8.60, the alleged loss is approximately $20,431. See Ash, No. 4:14-CV-92-D, Higgins Mot. Consolidate, Ex. C; 15 U.S.C. § 78u-4(e)(1) (imposing a limit on damages based on the mean trading price of the security over a 90-day period after the corrective disclosure). Similarly, Sandra Taylor ("Taylor") does not allege a specific loss attributable to the corrective disclosure, but any loss appears to be less than $3,400. Specifically, Taylor states that she purchased 250 PowerSecure shares on April 29, 2014, at a price of $21.83. Ash, No. 5:14-CV-385-D, Compl. 40. Thus, her alleged loss appears to be approximately $3,307.

For purposes of determining the lead plaintiff, Maguire is the plaintiff or movant with the largest financial interest in the requested relief.

6

The court next determines whether Maguire satisfies the other requirements of Rule 23. Under this inquiry, the court looks solely at whether the movant will be an appropriate class representative, and thus need only determine (1) whether the movant's claims or defenses are typical of the class's claims or defenses, and (2) whether the movant will fairly and adequately protect the interests of the class. See MicroStrategy, 110 F. Supp. 2d at 435; Fed. R. Civ. P. 23(a)(3),(4). The first requirement, typicality, is met when the representative plaintiff's claims arise from the same event that gave rise to claims of other class members and the claims are based on the same legal theory. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425 (4th Cir. 2003). Here, Maguire's claim centers on the same factual questions of defendants' alleged misrepresentations and on the same legal questions under Rule 10b-5 and section 20(a) of the Exchange Act.

The second requirement, adequacy, is met when the movant is represented by counsel who are qualified, experienced, and generally able to conduct the proposed litigation, and when the movant is a class member whose interests do not conflict with those of other class members. McLaurin v. Prestage Foods, Inc., 271 F.R.D 465, 476 (E.D.N.C. 2010). Having reviewed the record, the court finds that Maguire's selected counsel are qualified, experienced, and generally able to conduct the proposed litigation. See, e.g., Ash, No. 4:14-CV-92-D, Maguire Mem. Supp. Mot. Consolidate, Exs. D–E [D.E. 13-6, 13-7]. The court also finds no evidence that Maguire's interests conflict with those of the other class members. Thus, the court adopts the presumption that Maguire is the most adequate plaintiff.

Other movants may rebut this presumption with proof that Maguire "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No other movant has presented such proof. Cf. Ash, No. 4:14-CV-92-D, PowerSecure Investors Resp. to

7

Competing Mots. [D.E. 15]. Therefore this court appoints Macguire as lead plaintiff for the purported plaintiff class and approves its choice of lead counsel and liaison counsel.

II.

In sum, the court GRANTS Maguire's motion, Ash, No. 4:14-CV-92-D [D.E. 13], to consolidate the actions, to be appointed lead plaintiff, and to approve Maguire's choice of lead counsel and liaison counsel. The three actions are consolidated and shall proceed under the caption at case number 4:14-CV-92-D. The court DENIES Higgins's and the PowerSecure Investors' motions, Ash, No. 4:14-CV-92-D [D.E. 10, 14], to the extent that they each request to be appointed lead plaintiffs and to have their respective counsel chosen as lead counsel and liaison counsel.

SO ORDERED. This **10** day of October 2014.

JAMES C. DEVER III
Chief United States District Judge